IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONIO HAWKINS, | ) | |
| | ) | Civil Action No. 7:20cv00123 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| SGT. MAYS, et al., | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Antonio Hawkins, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, alleging that the defendants verbally harassed him, retaliated against him, and subjected him to excessive force and cruel and unusual living conditions. The defendants filed a motion for summary judgment, arguing that Hawkins failed to fully exhaust available administrative remedies before filing this action. After reviewing the record, the court will grant the defendants' motion for summary judgment.

## I.

Hawkins alleges that on September 18, 2018, while he was housed at River North Correctional Center ("River North"), Defendant Sgt. Mays transported Hawkins to segregation and stated, "I heard you['re] the one who's trying to get [Correctional Officers] fired. Why are you being such a dick?" Sgt. Mays subsequently denied Hawkins an informal complaint form so that Hawkins could not complain about the comments Sgt. Mays had made. On September 19, 2018, Hawkins was again denied informal complaint forms by Sgt. Mays and defendant Correctional Officer ("CO") Devine.

Hawkins also alleges that on September 20, 2018, as Hawkins was exiting the shower, CO Devine stated, "whaaa, you little pussy, you still crying about trying to write officers up [*sic*]," and then "ram[med]" Hawkins's head into the wall. Hawkins claims that Sgt. Mays directed CO Devine to twist Hawkins's wrist, which CO Devine did to the point that Hawkins felt like his wrist was breaking. Hawkins claims that he was then placed in a strip cell that was covered in feces, where CO Devine slammed Hawkins's head into the feces-covered bed and said, "he likes writing officers up, put his face right into this shit." Hawkins states that, without justification, he was stripped naked and left shackled in the "freezing" cold cell with no food, water, or toilet paper.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a

court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

### A.

The defendants argue that Hawkins failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees, and, for the following reasons, it will grant the defendants' motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is

mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

## B.

In support of their motion for summary judgment, the defendants point to three aspects of the undisputed factual record: (1) Grievance Coordinator B. Walls's affidavit; (2)

- 4 -

the Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and (3) Hawkins's grievance records related to the claims in this action. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Walls explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the disturbing issues raised in this action are grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. An inmate who is not satisfied with the response to the informal complaint, may file a regular grievance. If a response is not given to the inmate within fifteen days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate

within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

In his verified complaint dated November 5, 2018, Hawkins alleges that the defendants refused to provide him informal complaints. Attached to his complaint, Hawkins submits a regular grievance form dated October 17, 2018, in which he complained about the claims

- 6 -

raised in this action. The form was stamped received by the grievance department on October 23, 2018, but it was rejected at intake on the same day because Hawkins did not attach an informal complaint with response. Hawkins did not appeal this intake decision, and his complaint does not describe any other attempt to exhaust administrative remedies as to the claims raised in this action.

Despite Hawkins' contention that he was unable to obtain informal complaint forms, defendants submit three informal complaints that Hawkins filed concerning the claims of this action. In their motion for summary judgment, defendants argue that Hawkins failed to fully exhaust administrative remedies because he did not file any regular grievance or appeal after receiving responses to these informal complaints. The first informal complaint is dated October 4, 2018, and it was received by the grievance department on October 9, 2018. The second and third informal complaints are both dated October 5, 2018, and they were both received by the grievance department on October 10, 2018. All three informal complaints were responded to on October 17, 2018.[1]

Hawkins filed an unverified response to the defendants' motion for summary judgment and attached several exhibits and affidavits. In an affidavit, Hawkins asserts that between October 17, 2018, and December 5, 2018, he submitted "multiple" regular grievances concerning the issues raised in this action but that he received no responses to any of them.

---

[1] Hawkins also filed an emergency grievance concerning the issues raised in this action on September 27, 2018. An offender may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. The filing of an emergency grievance does not satisfy the exhaustion requirement. In order to satisfy the exhaustion requirement, the offender must submit his complaint by filing a regular grievance with the appropriate informal complaint and then appeal it through all available appeal levels.

Hawkins submits three regular grievance forms that he allegedly submitted, each with its own handwritten "certificate of service" certifying that it had been submitted. But none of these regular grievance forms are stamped received by the grievance department, and none exist in the VDOC's grievance records. The first regular grievance is dated November 20, 2018 (15 days after he filed his complaint in this action), and states that it is the "fo[u]rth grievance" that Hawkins had submitted "without receiving a response." The second regular grievance is dated December 3, 2018, and states that it is the "second grievance submitted in regard to this issue." And the third grievance is dated December 5, 2018, and states that it is the "third grievance" he has submitted with regard to these issues. Although Hawkins claims that he did not receive responses to these regular grievances, he does not allege that he appealed any of these grievances. This is fatal to his case.

Even if the court were to assume that Hawkins did submit the regular grievances as he asserts, there is no dispute that he did not receive a response to any of them and there is no dispute that he did not appeal the regular grievances when the time for prison officials to respond had expired. Hawkins also does not allege that he was prevented from appealing any of the regular grievances after no response was received within the specified time frame. Indeed, each of the three regular grievances was filed *after* he initiated this § 1983 action. Finding no genuine dispute of material fact, the court concludes that defendants are entitled to summary judgment as a matter of law because Hawkins failed to exhaust available administrative remedies.

- 8 -

## IV.

For the reasons stated, the court will grant defendants' motion for summary judgment.[2]

The Clerk shall send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 19th day of January, 2021.

_____/s/ Thomas T. Cullen_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[2] Hawkins filed a motion to amend his complaint to add a state law tort claim against the defendants. (*See* ECF No. 13.) Inasmuch as this action is being dismissed, the court declines to exercise supplemental jurisdiction over the state law claims and, thus, Hawkins' motion to amend is denied.